■ MURRAY M. SALZBERG, Respondent, v. STATE OF NEW YORK, Appellant. (Claim No. 40171.) — HAMM, J. Appeal from a judgment of the Court of Claims in an appropriation case, on the ground of excessiveness. The court found the value of a temporary easement to be $1,850. The State's expert determined the damage at $1,858 and the claimant submitted no evidence as to this item. We accept the court's finding of $1,850. The court found that the value of the subject property was $220,000 before the taking and $3,850 after the taking and, in addition to $1,850 for the easement, found that the claimant's damage was $216,150. Separate findings of the value of the land and the value of the building on the land were not made. However, for the purpose of the appeal the State accepts the claimant's unit value per square foot and the parties agree on a land valuation before appropriation of $125,800. The court's valuation after the taking was for land alone. The claimant has not appealed from the award and the State's brief recites "we now accept the Court's finding of $3,850 ". The issue thus becomes the value of the building on the taken property, $216,150 plus $3,850 minus $125,800, or $94,200. The claimant urged and the court found that the "highest and best use of claimant's property * * * was *  * * [for] volume retail sales outlet and/or discount house operation." The structure on the property was a powerhouse which had been vacated by the tenant power corporation in 1953 or 1954. The claimant's expert witness testified that the reproduction cost of the building was $346,100 and, after deducting 58% for physical, functional and economic depreciation, arrived at a value of $145,400. However, the record contains no evidence that the building, although a specialty in the sense that it was designed for a unique purpose, was capable of producing any income by use for the purposes for which constructed. On the contrary, the claimant's expert referred to the powerhouse as a "single purpose building" which was "no longer in need" and stated the

building "needed remodeling or tearing down, depending on how it could be best developed". In these circumstances, where the claimant's testimony shows that the structure has no utility or value as a specialty, reproduction cost less depreciation is not an appropriate method of appraisal of value or, stated otherwise, a specialty which, in fact, concededly has no utility as such, may not be given a value by application of the reproduction method. The claimant's expert also pursued another method of approach. After describing the massive brick and masonry building, he explained that a zoning ordinance made off-street parking mandatory and required provision of parking space for one car for every 600 feet of retail or office space. He conceded that the land owned by the claimant was inadequate to comply with the ordinance but stated that adjoining railroad land was available for purchase at a price which does not appear in the record. He testified that a store containing 40,000 square feet could be built partly on the subject land and partly on the land to be acquired at a cost of $330,000 for erection. He added $330,000, the cost of the hypothesized building, $145,400, the value of the powerhouse as depreciated, $98,300, the cost of remodeling the powerhouse, and "the on site improvements, the parking lot and the lighting" not specified as to cost and arrived at a figure of $611,700. He developed value as follows: The existing building as remodeled would have produced 8,100 square feet on the first floor and 8,100 square feet on the remodeled second floor. To 16,200 square feet he added 40,000 square feet in the hypothesized building, obtaining a total of 56,200 square feet, which, he said, would produce at $1.25 per square foot an "income potential of $70,252." He estimated a return of $6,075 from 8,100 square feet in the basement of the existing building on a basis of $.75 per square foot, making a total of $76,325 "rounded to $76,300". He assumed a tenant who would pay all taxes and insurance and make all repairs and, after deducting $1,000 for management, estimated net income of $75,300. He assumed a net income, "attributed to the improvements only", of $55,053 "rounded to $55,100" and arrived at by multiplying $611,700, the cost of the improvements, by 9% consisting of 6% interest and 3% for amortization. We are not concerned with the remainder of the computations as they relate only to land value which is not in issue. It is not clear to what extent the expert's testimony by hypothetical approach was intended as a check on land value arrived at by market approach or intended as substantiation of the claimed highest and best use or intended as proof of value of the powerhouse. In any event the evidence, if submitted as proof of structural value, is so conjectural and speculative that it and any conclusions drawn from it are wholly insufficient and the record as a whole contains no proof adequate or competent to establish the value of the building. The absence of competent proof was not cured by any testimony offered by the State as the State's expert testified that the building was an "under improvement" requiring expensive demolition "to create a piece of property that was available to sell." To summarize, the record affords no basis for giving any effect to the reproduction cost of the building; the theory of a potential use (for which, in truth, the property was physically inadequate and incapable) was supported by no evidence of any substance and rested solely on conjecture; the supposed basis for the capitalization of assumed net rental income from hypothetical improvements, if only for purposes of a guide or check, or in substantiation of high land valuation, was equally tenuous; and while there was, in short, no proof of any weight that the value of the land was enhanced by the building, we are not satisfied that its presence was so depreciative as to require that our evaluation give effect to the cost of demolition. Consequently, the award must be predicated on land values only. Judgment modified, on the law and the facts,

by reducing the award to $63,800, with appropriate interest, and, as so modified, affirmed, without costs. Gibson, P. J., Herlihy, Taylor and Aulisi, JJ., concur.